CITY OF BREMERTON v. NORTH PACIFIC PUBLIC SERVICE
CO. et al.

(District Court, W. D. Washington, N. D.   July 13, 1917.)

No. 3608.

1. EMINENT DOMAIN ⬤⟲169—CONSTRUCTION OR ACQUISITION OF LIGHTING
   PLANT—PRELIMINARY PROCEEDINGS—ORDINANCE.
     Under Rem. & Bal. Code Wash. § 8006, which provides that, when a
   city desires to acquire a lighting plant, the council shall by ordinance
   "specify and adopt the system or plan proposed and declare the es-
   timated cost thereof as near as may be," and submit the proposition to
   the voters at an election, as construed by the Supreme Court of the
   state, the proposition submitted to the voters must not only specify and
   adopt a system, but must place a limit on the expenditure to be made,
   and also provide the means for its payment, and unless a valid ordinance
   has been submitted and adopted the city cannot maintain proceedings for
   the condemnation of property. .

2. EMINENT DOMAIN ⬤⟲45—LIGHTING PLANT—CONDEMNATION OF PROPERTY
   IN ANOTHER CITY.
     Under the laws of Washington a city cannot acquire by condemnation a
   lighting system in another city, nor the franchise granted therefor by the
   latter city.

At Law.   Action by the City of Bremerton, Wash., against the North
Pacific Public Service Company and the Fidelity Trust Company of
Tacoma.   On demurrer to amended complaint.   Demurrer sustained.

Marion Garland, City Atty., of Bremerton, Wash., and James W.
Bryan, of Seattle, Wash., for plaintiff.
Stiles & Latcham, of Tacoma, Wash., for defendants.

NETERER, District Judge.   The city of Bremerton seeks to con-
demn a certain lighting plant owed by the defendant North Pacific
Public Service Company, covering certain franchises in the city of
Bremerton, the county of Kitsap, the town of Port Orchard, and the
city of Charleston, Wash.   The action was commenced in the state
court and removed to this court.   Process was served on the 19th of
March, 1917.   A demurrer was filed to the original complaint and
sustained.   An amended complaint was filed in this court on the 19th
of June, 1917.   In the amended complaint, after alleging the corporate
capacity of the plaintiff as a city of the third class, it is stated:

  "That on or about the 28th day of October, 1912, the city council of the city
of Bremerton duly passed an ordinance, entitled 'An ordinance for the pur-
chasing, acquiring and constructing of an electric lighting system for the city
of Bremerton, and providing for the borrowing of money to be used therefor
by issuing the negotiable coupon bonds of said city of Bremerton in the sum
of twenty-five thousand dollars, and for the issuance and negotiation of special
lighting fund bonds against the earnings of said electric lighting system in
such further sum or sums as to the city council may seem proper, and provid-
ing for the holding of a special election for submitting the said proposition to
the qualified voters of the said city of Bremerton for ratification or rejection,'
which said ordinance was approved on the 28th day of October, 1912, and was
thereafter published as by law provided, a copy of which said ordinance is
hereto attached, marked 'Exhibit A' and made a part of this amended com-
plaint."

It is alleged that the ordinance was submitted to the qualified electors pursuant to the provisions of said ordinance, and that on the 14th of May, 1917, the city council of the city of Bremerton, by resolution duly passed, entered into negotiations with the defendants, the owners of the plant, "and every effort was made by the city council through its officers and agents to come to an agreement as to the proper price to be paid for said plant, * * * " and "that a resolution was passed by the city of Bremerton, offering and tendering to the said defendant $75,000 cash, * * * " and that the defendant refused to accept the said sum, and that it is impossible to come to an agreement; that because of the growth of the community in which the defendants operated, extensions were made, and that "in accordance with said natural growth and extending said business and system the said wires and poles have been extended through the city of Charleston and over its streets under and by virtue of a franchise obtained from the city of Charleston, and which said franchise is now in force and is owned by the said North Pacific Public Service Company; that the said wires and poles have been extended over contiguous unincorporated territory and have also been extended within the town of Port Orchard; that the entire distributing system is one single system having a common source of supply and a common main connection therewith; that it is impossible to divide or segregate the said plant into different units, and that it is the desire and purpose of the city of Bremerton to take over the entire system as one unitary and complete system"; that the city of Bremerton desires to condemn and take over all of the property of the said company, both personal and real, situated within the city of Bremerton and the territory contiguous thereto, and used in or in any way connected with the said lighting and power plant and system; "that the said property * * * consists of poles, wires, transformers, office fixtures, which said wires and poles are located over and on the streets of the city of Bremerton and Charleston and the town of Port Orchard and over the county roads in the territory contiguous thereto. * * * " Then follows a description of the property, including the franchises granted by the county commissioners of Kitsap county, by the city of Charleston, and of the streets and highways in the county covered by the plant of the defendant.

Motion to dismiss has been filed, on the ground that the amended complaint does not remedy the defect disclosed by the original complaint. A demurrer is likewise filed upon the ground that the petition does not state facts sufficient to constitute a cause of action or to entitle the petitioner to any relief. They will be considered together and as challenging the sufficiency of the petition.

[1] The question, at the outset, is whether the plaintiff shows its qualification under the statutes of Washington to exercise the right of eminent domain. That the city has the power to purchase or acquire by condemnation proceedings a light and power plant is conceded. Section 8006, Remington & Ballinger's Code of Washington, provides that the council shall by ordinance specify and adopt the system or plan proposed and declare the estimated cost, and submit for ratification or

rejection to the qualified voters at the election such proposition, except in cases when an existing plant is extended or increased, or for betterments to such plant, or where the charter authorizes the council to provide by ordinance such utility, for which no general indebtedness is to be incurred, and, if general indebtedness is to be incurred, it must be assented to by three-fifths of the qualified voters of such city,' voting at a general or special election. The ordinance attached to the complaint as a basis for this action does not conform to the requirement of this section of the statute. The title of the ordinance is as follows:

"An ordinance for the purchasing, acquiring and constructing of an electric light system for the city of Bremerton, and providing for the borrowing of money to be used therefor by issuing the negotiable coupon bonds of the said city of Bremerton in the sum of twenty-five thousand dollars, and for the issuance and negotiation of special lighting fund bonds against the earnings of said electric lighting system in such further sum or sums as to the city council may seem proper  *  *  * "

—and then submits three proposed plans. Propositions 2 and 3 do not submit a "plan or system" adopted, but leave the matter for the future determination of the council, clearly not within the provisions of the law. Section 8006, Remington & Ballinger's Code of Washington, provides that the council, by ordinance, "shall specify and adopt the system or plan proposed, and declare the estimated cost thereof, as near as may be." A liberal construction might hold sufficient proposition 1, which, in substance, is to purchase, acquire, or condemn, "by whatever negotiations, condemnation suits, or proceedings may be found necessary or appropriate,  *  *  * " provided it had included a legal plan for payment. The Supreme Court of Washington, in Hansard v. Green, 54 Wash. 161, 103 Pac. 40, 24 L. R. A. (N. S.) 1273, 132 Am. St. Rep. 1107, and Uhler v. Olympia, 87 Wash. 1, 151 Pac. 117, 152 Pac. 998, held that payment is as much a part of the "plan or system" as is the purchase, and that the method should be provided in the ordinance. While the ordinance provides for the issuance of bonds to the amount of $25,000, the estimated value of the plant is placed at $125,000, and proposition 1 provides that:

"Such other and further sum as may be required as aforesaid for payment of and for the said electric lighting plant over and above the said sum of $25,000 shall be derived from the sale by the said city of Bremerton, on the open market, at such terms and upon such conditions as may be deemed wise and proper. The special lighting fund bonds of the said city which said bonds shall be a lien upon the profits and revenues of said lighting plant, subject to the terms and conditions set forth hereinafter in this ordinance."

The amount is left indefinite, and clearly within the holding of the Supreme Court in Uhler v. Olympia, supra, in which the court said that "the purpose of the statute was to compel a reasonably definite estimate of the value of the thing to be purchased, beyond which the council could not go," and further said:

"It will be seen that this section of the ordinance violates the spirit and intent of the act giving the council power to pass an ordinance providing for the submission of such questions. The council had fixed, as the estimated sum necessary to purchase the waterworks, $90,000. It could not, therefore, make its own act indefinite by providing, in the event a larger sum became necessary

after the condemnation to carry out the purpose intended, that it might provide by supplemental ordinance for the issuance of bonds in the total amount necessary, whatever that sum might be. If the council could do this, it could make out of the statute a mere form and leave the citizen as uninformed as to the probable amount of the bond issue as if no sum had been fixed as an estimate at all. It could fix an estimate at, say, $25,000, without reference to probable values, and issue bonds at will and to any amount."

In the instant case, while in the preamble the value of the plant is placed at $125,000, there is no limit to the amount of bonds which might be issued. This is clearly insufficient. Uhler v. Olympia, supra.

It is said that the court is not concerned with the legality of bonds in this case, and that subsequently an ordinance could be passed and submitted after the value of the plant was ascertained. The statute, however, provides a method, which is that a "plan and system" must be adopted, and the estimated value to be expended, and the payment, the Supreme Court, supra, says is a part of the plan. This court must adjudicate the necessity, and also, prima facie at least, the qualification under the statute of the plaintiff to exercise the right, and if it is apparent upon the face of the complaint that the requirements of the statute and the decisions of the state Supreme Court have not been complied with or conformed to, the court would not do an idle thing and proceed in the cause. The Supreme Court, in State ex rel. Wright v. Tacoma, 92 Wash. 591, 159 Pac. 765, did say that "such additional costs * * * as might be incurred should not go unpaid, but should be paid out of the earnings of the plaintiff"; but in that case provision was made for such payment in the ordinance, and the bond issue limited. The court did not modify its holding that the limit of the bond issue must be fixed by the ordinance, and the expression of the voters obtained thereto.

[2] Complainant seeks to condemn franchises held by the defendant in the city of Charleston, another municipality. The Supreme Court, in Spear v. Bremerton, 90 Wash. 507, 156 Pac. 825, held that the city of Bremerton could not acquire a water system in the city of Charleston, or acquire the franchises owned by the water company in the city of Charleston, saying at page 511 of 90 Wash., at page 826 of 156 Pac.:

"The power is not within the terms of the several acts to which reference has been had, and it is certainly not within the necessary implications of any of them. The purpose of the law is plain."

Light and water are included in the same acts of the Legislature, and the construction and statutory power given with relation to water franchises, I think, would equally apply to light franchises. It follows that so much of the plant as lies within the cities is not subject to condemnation by the plaintiff.

Attention has been directed to Omaha v. Omaha Water Co., 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084, as being in contravention to the rule adopted by the Supreme Court of this state, and it is urged that this court should adopt the rule announced in the Omaha Case. It will be noted that the charter of Omaha provided, among other things:

"Power to appropriate any waterworks system, plant or property already constructed, to supply the city and the inhabitants thereof with water, or any part thereof, whether lying within said city or in part without the city and within ten miles from the corporate limits of such city, including all real estate, buildings, machinery, pipes, mains, hydrants basins, reservoirs and all appurtenances reasonably necessary thereto, and a part of or connected with said system plant or property, and franchises to own and operate the same, if any."

The Omaha act was much more comprehensive than the Washington law, and that case was based upon express power granted; whereas, the Supreme Court of Washington based its conclusion upon lack of legislative authority.

The other objections raised will not be discussed.

The demurrer must be sustained.